UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 13-cr-00030 (ESH) |
| ) | |
| KEVIN BROWN, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION & ORDER**

Before the Court is defendant Kevin Brown's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i).  (*See* Def.'s Mot., ECF No. 43.)  He argues that "[a]s a 49-year old African American male, grief-stricken, and suffering from an adjustment disorder and depression from the loss of his twin brother on April 1, 2020, and the circumstances of being incarcerated at FCI Butner Low—a facility rampant with COVID-19—Mr. Brown is at increased risk of serious complications or death from COVID-19." (*See* Supp. Motion at 1, ECF No. 48.)  The government opposes Brown's motion, arguing that he has not met the requirements of Section 3582(c)(1)(A).  (*See* Gov't's Opp., ECF No. 50.)  For the reasons stated below, the Court denies Brown's motion for release.

### **BACKGROUND**

Brown pled guilty on February 15, 2013, to one count of conspiracy to defraud the government with respect to claims, in violation of 18 U.S.C. § 286; one count of aiding and abetting false claims for refunds, in violation of 18 U.S.C. § 287; and one count of aiding and abetting fraud and related activity in connection with identification information, in violation of 18 U.S.C. §§ 1028(a)(7), (b)(2).  On December 20, 2016, Brown was sentenced to 135 months of

incarceration, to be followed by 36 months of supervised release. (*See* Judgment, ECF No. 39.) The Court also imposed an assessment of $300 and restitution of $4,543,659. (*See id.*) Brown was committed on February 7, 2017 (*see* BOP Sentence Computation Data, ECF No. 50-1), and is currently incarcerated at FCI Butner Low, in Butner, North Carolina. He has served approximately one-third of his sentence and is projected for release on October 31, 2026. (*See id.*)

Brown filed a motion for compassionate release *pro se* on May 13, 2020. Counsel from the Office of the Federal Public Defender entered her appearance on behalf of Brown soon after and filed a supplemental motion for his release on July 5, 2020. She also submitted a request for a motion for compassionate release to be filed on his behalf to the Warden of FCI Butner Low on May 20, 2020. (*See* Supp. Mot. at 25.) Counsel never received a response to this request, though Brown may himself have received a rejection by mail on May 26, 2020. (*See id.* at 26 & n.22.)

## ANALYSIS

**I.    LEGAL STANDARD**

18 U.S.C. § 3582(c) provides, in relevant part, that—

> The court may not modify a term of imprisonment once it has been imposed except that . . .
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

This section represents an expansion of the original regime of compassionate release, which only allowed courts to hear motions brought by the Director of the Bureau of Prisons ("BOP"). As amended by the First Step Act of 2018, the section now permits a *defendant* to move for compassionate release on his own behalf. See Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) ("Increasing the Use and Transparency of Compassionate Release"). However, before coming to court the statute requires that a defendant either exhaust his administrative remedies within the BOP or wait thirty days after submitting a request to the BOP that it file a motion on his behalf. For a Court to grant a motion for compassionate release (made by either the BOP or a defendant), it must find "extraordinary and compelling reasons" to reduce a defendant's sentence.[1] Furthermore, even if a Court concludes that a defendant has presented such reasons, it must also "consider[] the factors set forth in section 3553(a)." See 18 U.S.C. § 3582(c)(1)(A).

As noted above, Brown's counsel filed a request for the BOP to file a motion for compassionate release on his behalf on May 20, 2020. More than thirty days have passed since that request was filed, and therefore, he has exhausted his administrative remedies. The Court will now turn to the merits of Brown's motion.

## II.    MOTION FOR RELEASE

Brown argues that his "personal history, characteristics, and medical conditions make him particularly vulnerable to [COVID]-19 and put him in grave danger in a prison environment during this pandemic." (Supp. Mot. at 26.) These characteristics and conditions include, *inter*

---

[1] Section 3582(c)(1)(A) also provides that if a defendant is at least 70 years old and has served a certain number of years in prison, his sentence may be reduced. See 18 U.S.C. 3582(c)(1)(A)(ii). However, as Brown is only 49, that subsection is not relevant, and the Court need only consider whether there exist "extraordinary and compelling reasons."

*alia*, his age, race, alcohol addiction, and "untreated mental health conditions," including "adjustment disorder with depressed mood." (*See id.* at 31.)

The commentary to Section 1B1.13 of the United States Sentencing Guidelines defines "extraordinary and compelling reasons" as including: (1) certain medical conditions; (2) the age of the defendant; (3) family circumstances of the defendant; and (4) reasons "other than, or in combination with, the reasons described" in the three previous subsections. Medical conditions warranting a reduction in sentence include both terminal illnesses and also other chronic conditions that "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at Application Note 1(A)(i)-(ii). The "extraordinary and compelling reason," whatever it may be, "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *See id.* at Application Note 2. Regardless of whether the Court considers Section 1B1.13 and its commentary binding or merely helpful in light of the passage of the First Step Act,[2] "[t]he court is in a unique position to determine whether the circumstances warrant a reduction" of a defendant's sentence. *See id.* at Application Note 4.

First, Brown cites research alleging the outsized effect COVID-19 has had on older people, men, and African American individuals in particular. (*See* Supp. Mot. at 26-29.) Brown

---

[2] Section 1B1.13 only references "motion[s] of the Director of the Bureau of Prisons" when describing what constitutes an "extraordinary and compelling reason," as it has not been amended since the First Step Act of 2018 provided an avenue for defendants to make their own motions. In that way it is "anachronistic," *United States v. Asaro*, 2020 WL 1899221, at *4 (E.D.N.Y. Apr. 17, 2020) (internal quotation marks omitted), as it has not been changed since Congress "further increase[d] the use of compassionate release and . . . explicitly allow[ed] courts to grant such motions even when [the BOP] finds they are not appropriate." *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). "Because the Commission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the *current* statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019) (emphasis in original), several courts have concluded that while the current policy statement may be helpful, "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction" under the regime created by the First Step Act. *Beck*, 425 F. Supp. 3d at 579.

4

also argues that his mental health conditions, in combination with his alcohol addiction, may impair his immune function and make him more likely to face serious illness if infected with COVID-19.  (*See* Supp. Mot. at 34-35.)  Nevertheless, the Court concludes that none of these factors, alone or in combination, "*substantially* diminish[]" his ability to provide self-care while in a prison environment.  See U.S.S.G. § 1B1.13 at Application Note 1(A).

At the outset, "[i]f being male alone sufficed, every inmate at FCI Butner would qualify for immediate release or reduction in his sentence."  *See United States v. Ayers*, 2020 WL 2838610, at *2 (D.D.C. June 1, 2020) (internal quotation marks and brackets omitted).  And, while the Centers for Disease Control and Prevention ("CDC") list "immunocompromised" people as among those at increased risk for serious illness with COVID-19, *see* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 29, 2020), it specifically provides that the main concern is for those who are immunocompromised due to solid organ transplant—the CDC says that the use of immune-weakening medicines, or other physical conditions that decrease an individual's immune system function, only "may" increase an individual's risk for serious illness with COVID-19.  *See id.*  Brown has none of these conditions.

Moreover, Brown himself said he was "healthy" and has "no health problems" when originally petitioning the Court for compassionate release.  (*See* Def.'s Mot. at 1.)  This squares with his medical records from the BOP, which say he is "a mental health care level one inmate with no requirement for routine psychological services." (*See* Gov't Opp. at 2.)  His BOP records also reflect his diagnosis of adjustment disorder with depressed mood, which was brought to the Court's attention prior to sentencing, but nevertheless "note[] the absence of any

current mental health diagnosis, functional impairment or acute distress." (*See id.* at 3.) Even considering defendant's diagnosis, he has not met his burden. The cases defendant cites for the proposition that a defendant's "*mental* health needs may also be the basis for granting compassionate release," *see United States v. Johnson*, 2020 WL 3041923, at *10 (D.D.C. May 16, 2020) (emphasis in original), involved defendants who suffered from serious physical ailments in addition to their serious mental health issues. *See id.* (describing defendant's severe obesity and pulmonary hypertension as an "extraordinary and compelling reason" warranting his release prior to discussing his PTSD); *see also Doe v. Barr*, 2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020) (noting that, in addition to his mental health conditions, petitioner suffered from latent tuberculosis, which could also increase his risk since it is another respiratory illness).

Lastly, the Court is mindful of the conditions at the prison where Brown is currently housed, FCI Butner Low, in particular the fact that it is still the site of an active COVID-19 outbreak, and that numerous inmates have died there. *See* Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/ (last accessed July 29, 2020) (listing 16 inmate deaths and 86 positive, non-recovered inmates at FCI Butner Low). However, the Court must concern itself primarily with the particular characteristics of an individual defendant when determining what constitutes an "extraordinary and compelling reason," not a generalized risk to the prison population as a whole. Under this analysis, the Court concludes that Brown "has not demonstrated that his health conditions place him in a *uniquely* vulnerable situation that makes his need for release significantly greater than any other detainee" at FCI Butner Low. *See Ayers*, 2020 WL 2838610, at *2 (emphasis added).

Furthermore, even if the Court were to conclude that Brown had demonstrated an "extraordinary and compelling reason" warranting his release, it would still be compelled to deny

his motion based on an analysis of the factors under 18 U.S.C. § 3553(a).  At the outset, Brown has served only one-third of his sentence.  (*See* Gov't Opp. at 9.)  He argues, however, that his sentence inaccurately reflected his culpability,[3] and that it was inappropriately long compared to other members of the conspiracy.  (*See* Supp. Motion at 3-5).  The Court disagrees.  Brown "was involved at every level" of the fraud conspiracy—he recruited co-conspirators and convinced them to misappropriate identities and use their personal addresses.  (*See* Gov't Opp. at 10.)  "He prepared the fraudulent returns, fraudulently endorsed refund checks, negotiated refund checks and paid co-conspirators to negotiate checks for him."  (*Id.*)  Moreover, he "personally received millions from his perpetration of this fraud" (*see id.*), with the government at one point suggesting that even by its most "conservative estimate," he pocketed as much as $1,000 per fraudulent check.  (*See* Gov't Sentencing Mem. at 3, ECF No. 32.)  Lastly, Brown "continued in the fraud after law enforcement executed search warrants on his residence and business," and even "up [to] and through his guilty plea."  (*See* Gov't Opp. at 10; Gov't Correction, ECF No. 52.)

      While Brown argues that his sentence is inappropriately high compared to other members of his scheme, the person most similar to Brown is Tony Bryant, who was involved in a similar income tax refund scheme and received a similar sentence.  *See United States v. Bryant*, No. 15-cr-00152 (RMC).  Like Brown, Bryant had an adjusted offense level of 33 and a criminal history of I under the Guidelines, computed almost the exact same way—Bryant also received enhancements for loss amount, number of victims, vulnerable victims, sophisticated means, and

---

[3] Brown's adjusted offense level reflected the large amount of loss.  It also reflected the number of victims, the sophisticated means used, the vulnerability of the victims, and Brown's leadership role in the scheme, as shown by the enhancements imposed under the Guidelines.  (*See* Supp. Mot. at 2-3 (listing enhancements imposed); *see also* Gov't Opp. at 10 ("The sentence imposed on the defendant appropriately reflected his culpability, the size of the loss attributable to him and the personal gain he received from his leadership and participation in the fraud.").)

7

his role in the scheme. *See* Gov't Mem. in Aid of Sentencing at 5, ECF No. 287. Brown, on the other hand, received slightly higher enhancements for the loss amount and his role in his scheme, but he received a decrease of three levels for acceptance of responsibility. Bryant went to trial instead of pleading guilty, as Brown did. However, after trial, he received a sentence of 144 months, even higher than Brown's sentence of 135 months. (*See* Supp. Mot. at 4.)

Given all these facts, the Court believes that Brown's original sentence "remains appropriate and 'not greater than necessary' to accomplish the Court's purposes in sentencing him." *See Ayers*, 2020 WL 2838610, at *2 (quoting 18 U.S.C. § 3553(a)). Shortening his sentence to time served at this juncture would not "reflect the seriousness of the offense, . . . promote respect for the law, . . . [or] provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A).

## CONCLUSION

For the foregoing reasons, the Court concludes that Brown has not demonstrated the existence of an "extraordinary and compelling reason" for a reduction in his sentence. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Moreover, the Court concludes that the factors under 18 U.S.C. § 3553(a) counsel against a reduction in his sentence at this time. The Court will therefore **DENY** Brown's Motion for Compassionate Release (ECF No. 43) and the Supplemental Motion (ECF No. 48).

/s/ Ellen S. Huvelle
_____
ELLEN S. HUVELLE
United States District Judge

Date: July 29, 2020